UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRINITY FRANKLIN BUFORD,

    Petitioner,

v.                                            Civil Action. No. 18-cv-12198
                                             HONORABLE MARK A. GOLDSMITH

ERICK BALCARCEL,

    Respondent.
_____/

**OPINION & ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS**

Trinity Franklin Buford, ("Petitioner"), confined at the St. Louis Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his pro se application, Petitioner challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529; carrying a weapon with unlawful intent, Mich. Comp. Laws § 750.226; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; and three counts of possession of a firearm in the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. For the reasons stated below, the petition for writ of habeas corpus is denied.

## I. BACKGROUND

Petitioner was convicted by a jury in the Saginaw County Circuit Court. Sharon Jackson asked her friend, Charles Byrd, to drive her to the credit union, where she withdrew $500.00. The two then ended up at the Food Basket. Jackson went into the Food Basket while Byrd waited outside in his car. 1/6/2016 Tr., Ex. 2 to Rule 5 Filing, at 83-85 (Dkt. 9-2).

1

While Byrd was sitting in his car, he saw a man that he knew from the neighborhood. Byrd knew this man only by his nickname, "Black." Byrd positively identified Petitioner as being this individual "Black" at trial. 1/6/2016 Tr. at 119, 121, 128. Byrd testified that Petitioner approached him and asked if he had a cigarette. Byrd replied that he did not. Petitioner asked if he could get a ride and to sit in the car to warm up. Byrd agreed. Byrd indicated that he had no problem allowing Petitioner to sit in the car behind him, because Byrd knew Petitioner. Although Petitioner was wearing a scarf that day, Byrd testified that Petitioner pulled the scarf down to talk to him, both outside and inside the car, so Byrd was able to identify the person he was talking to as being Petitioner. Byrd knew the person he was talking to was Petitioner. Id. at 120-122.

Jackson exited the store and approached the vehicle. Jackson saw a man sitting in the backseat of Byrd's car. Jackson was able to get a better look at the man as she approached the vehicle and thought better of putting her items in the backseat with a stranger. Id. at 85-86. Although Petitioner's face was partially covered with a scarf, Jackson testified that she could see Petitioner's eyes, eyebrows, and a scar on his forehead. Jackson positively identified Petitioner as the person in the backseat. Id. at 89.

Byrd drove the car for a short distance before stopping the car to let Petitioner out. But when they stopped, Petitioner placed a pistol at Jackson's head and demanded her purse. Id. at 86, 124-125. Jackson testified that she knew that the weapon was a pistol because it was right next to her head and looked like her uncle's nine-millimeter semiautomatic handgun. Jackson also testified that she had taken criminal-justice courses at Delta College. Byrd also identified the weapon as a pistol, possibly a Glock. Id. at 88–89, 126.

Jackson initially refused to relinquish her purse, so Petitioner hit her in the head with the pistol and again demanded the purse. When Jackson again refused, Petitioner struck her in the

2

head a second time. Jackson finally gave up her purse, because she feared for her life. Petitioner fled on foot. Id. at 87-88, 125-126. Jackson and Byrd later positively identified Petitioner to police from a photographic lineup. Id. at 93–95, 128–129.

Two witnesses testified for Petitioner. Rebecca Howard testified that she picked Petitioner up and dropped him off at his mother's house the morning of the robbery, around 11 a.m. 1/7/2016 Tr., Ex. 3 to Rule 5 Filing, at 9–12 (Dkt. 9-3). Gary Jones, Sr. testified that he was at the Food Basket on the morning of the robbery, knew Byrd and Jackson, and saw the person described as "Black" by Byrd's car, but that this person was not Petitioner. Id. at 18–19, 24, 28.

Petitioner's conviction was affirmed. People v. Buford, No. 333768 (Mich. Ct. App. Nov. 17, 2016); lv. den. 895 N.W. 2d 530 (Mich. 2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Buford was denied his state and federal constitutional rights to due process of law where the prosecution failed to produce legally sufficient evidence to identify Appellant as a perpetrator beyond a reasonable doubt[.]

II. Mr. Buford was denied his state and federal constitutional rights to due process of law and a fair trial guaranteed him through the Fifth and Fourteenth Amendments when the convictions of carrying a dangerous weapon with unlawful intent, felon in possession of a firearm and three counts of felony firearm must be reversed where the prosecution failed to present sufficient evidence to prove those charges beyond a reasonable doubt[.]

III. Mr. Buford was denied his state and federal constitutional rights to due process of law and a fair trial guaranteed him through the Fifth and Fourteenth Amendments where trial counsel was ineffective for not conducting a full investigation of possible exculpatory factors and not calling alibi witnesses for the Defendant and the trial court abused its discretion by not allowing an adjournment to retrieve discovery materials from the prosecution[.]

## II. STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-411.

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 102 (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id. To obtain habeas

relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 103.

The Michigan Court of Appeals denied Petitioner's application for leave to appeal on Petitioner's direct appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied Petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's reasoning. Harrington, 562 U.S. at 98. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." Id. When a habeas petitioner presents a federal claim to a state court and that state court has denied relief, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 99. That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. Id. at 99-100.

In the present case, the AEDPA deferential standard of review applies where the Michigan Court of Appeals rejected Petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order, because these orders amounted to a decision on the merits. See Werth v. Bell, 692 F. 3d 486, 492-494 (6th Cir. 2012).

### III. DISCUSSION

**A. Claims # 1 and # 2: the sufficiency of evidence claims**

5

Petitioner in his first and second claims challenges the sufficiency of the evidence to convict him.

This Court notes that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). But the crucial question in reviewing the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt"; instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Id. at 318-319 (internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's adjudication of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the Jackson standard. See Cavazos v. Smith, 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Id. Indeed, for a federal habeas court reviewing a state court conviction, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." Coleman v. Johnson, 566 U.S. 650, 656 (2012). A

state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." Id.

On habeas review, a federal court should not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed by the factfinder at trial. Marshall v. Lonberger, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. Matthews v. Abramajtys, 319 F.3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. Walker v. Russell, 57 F.3d 472, 475 (6th Cir. 1995).

Petitioner in his first claim argues that there was insufficient evidence to prove his identity as the perpetrator of the crime.

Under Michigan law, "the identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." Byrd v. Tessmer, 82 F. App'x. 147, 150 (6th Cir. 2003) (citing People v. Turrell, 181 N.W.2d 655, 656 (Mich. Ct. App. 1970)).

In the present case, both Mr. Byrd and Ms. Jackson positively identified Petitioner as the armed robber both at a pre-trial photographic array and later at trial. There was sufficient evidence to establish Petitioner's identity as the perpetrator because he was positively identified by two eyewitnesses, both at the pre-trial photographic identification and later at trial. See United States v. Sullivan, 431 F.3d 976, 983–984 (6th Cir. 2005). Although Petitioner attacks the quality of the eyewitness identifications, he is essentially asking this Court to re-weigh the testimony and

credibility of the evidence, which this Court cannot do.  See United States v. Campbell, 18 F. App'x. 355, 358 (6th Cir. 2001) (quoting United States v. Tipton, 11 F.3d 602, 609 (6th Cir. 1993)).

Because there were multiple pieces of evidence to establish the Petitioner's identity as the perpetrator of the robbery, the Michigan Court of Appeals did not unreasonably apply Jackson v. Virginia in rejecting Petitioner's first sufficiency of evidence claim.  See Moreland v. Bradshaw, 699 F.3d 908, 919-921 (6th Cir. 2012).

Petitioner in his second claim argues that there was insufficient evidence to sustain his convictions for felon in possession of a firearm, felony-firearm, or carrying a weapon with unlawful intent, because the prosecutor failed to prove that a real firearm was used in the commission of these crimes.

The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense.  See Parker v. Renico, 506 F. 3d 444, 448 (6th Cir. 2007).  The elements of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that, at the time of possession, less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines.  Id.  Under Michigan law, possession of a firearm can be either actual or constructive.  Id. (citing People v. Hill, 446 N.W.2d 140, 143 (Mich. 1989)).  The elements of carrying a weapon with unlawful intent under Michigan law are "(1) carrying a firearm or dangerous weapon, (2) with the intent to unlawfully use the weapon against another person." United States v. Martin, 166 F. Supp. 3d 900, 902 (E.D. Mich. 2015) (quoting People v. Mitchell, 835 N.W.2d 615, 621 (Mich. Ct. App. 2013) (quoting People v. Harrington, 487 N.W.2d 479, 483 (Mich. Ct. App. 1992)) (emphasis omitted).

8

> Mich. Comp. Laws § 8.3(t) states:
>
> The word "firearm", except as otherwise specifically defined in statute, includes any weapon which will, is designed to, or may readily be converted to expel a projectile by action of an explosive.

In the present case, Ms. Jackson testified that she knew that Petitioner's weapon was a pistol because it placed right next to her head. Jackson testified that the pistol looked like her uncle's nine-millimeter semiautomatic handgun. Jackson also testified that she had taken criminal-justice courses at Delta College, which gave her some knowledge about handguns. Mr. Byrd also identified the weapon as a pistol, possibly a Glock. This testimony was sufficient to establish that Petitioner used an actual firearm, so as to sustain his various firearms convictions. See People v. Davis, 549 N.W.2d 1, 5 (Mich. Ct. App. 1996); People v. Perry, 432 N.W.2d 377, 383 (Mich. Ct. App. 1988). Under Michigan law, a prosecutor is not required to admit a firearm into evidence to prove that the defendant possessed a firearm during a crime. See People v. Hayden, 348 N.W.2d 672 (Mich. Ct. App. 1984). The victim's testimony that Petitioner was armed with a firearm during the commission of the other felony offenses is sufficient by itself to support Petitioner's firearm convictions. See, e.g., Hudson v. Lafler, 421 F. App'x. 619, 626 (6th Cir. 2011). Petitioner is not entitled to relief on his second claim.

### B. Claim # 3: the ineffective assistance of counsel claim

Petitioner claims he was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington, 466 U.S. 668, 687 (1984). The defendant is required to rebut a strong presumption that counsel's

9

behavior lies within the wide range of reasonable professional assistance. Id. In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action or omission might be sound trial strategy. Strickland, 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. Id. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court's holding in Strickland places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. See Wong v. Belmontes, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." Harrington v. Richter, 562 U.S. at 101. Indeed, "because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles, 556 U.S. at 123 (citing Yarborough v. Alvarado, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id. This means that on habeas review of a state court conviction, "a state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington, 562 U.S. at 101.

"Surmounting Strickland's high bar is never an easy task." Id. at 105 (quoting Padilla v. Kentucky, 559 U.S. 356, 371 (2010)).

Petitioner first argues that trial counsel was ineffective for failing to search police databases and/or the Law Enforcement Information Network (LEIN) to look for the photographs or descriptions of other persons who resembled the description of the perpetrator in this case.

Petitioner is not entitled to relief on this claim. The sole "police database" in Michigan is LEIN, which limits access to certain persons and agencies. See Mich. Admin. R. 28.5201. It is not a public database and even those who are permitted to use LEIN do not have unrestricted access. See Mich. Admin. R. 28.5208. In any event, Petitioner is not entitled to relief on his ineffective assistance of counsel claim because he presented no evidence that LEIN contained any information that would have exculpated him as the perpetrator. See, e.g., Daniel v. Palmer, 719 F. Supp. 2d 817, 829 (E.D. Mich. 2010), rev'd sub nom. on other grds Daniel v. Curtin, 499 F. App'x. 400 (6th Cir. 2012).

Petitioner next argues that his counsel should have obtained the surveillance video from the Food Basket, where the assailant got into Byrd's vehicle. The owner of the Food Basket testified that the video had been overwritten under their retention schedule, which was only three days. 1/6/2016 Tr. at 157. In light of the fact that the surveillance videotape had been erased within 72 hours of the incident, counsel was not ineffective for failing to obtain the videotape.

Petitioner finally claims that that counsel should have called his employers, Don and Rita Johnson, to testify about his appearance on the day of the robbery.

Petitioner failed to attach any affidavits either to his Standard 4 pro per appellate brief that he filed in the Michigan courts, in which he raised this claim, or to his petition.[1]

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. See Workman v. Bell, 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, Petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. See Cooey v. Coyle, 289 F. 3d 882, 893 (6th Cir. 2002) (citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has failed to attach any offer of proof or any affidavits sworn by the Johnsons. Petitioner offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether these witnesses would have been able to testify and what the content of their testimony would have been. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call the Johnsons to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. See Clark v. Waller, 490 F. 3d 551, 557 (6th Cir. 2007).

In any event, any testimony from the Johnsons would have been cumulative of the evidence presented by defense counsel. Defense counsel presented an alibi witness on behalf of Petitioner and presented a second witness who testified that he was present at the Food Basket at the time of the incident and that Petitioner was not the man whom was identified as "Black" by Byrd and Jackson.

---

[1] See Defendant-Appellant's Pro Per Brief on Appeal at Page.ID 262-277 (Dkt. 9-5). Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a pro se brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." Ware v. Harry, 636 F. Supp. 2d 574, 594, n.6 (E.D. Mich. 2008).

Petitioner was not prejudiced by counsel's failure to present additional witnesses to challenge the eyewitnesses' identification of Petitioner as Jackson's assailant because their testimony was cumulative of other evidence and witnesses presented at trial in support of Petitioner's misidentification claim. Wong, 558 U.S. at 22-23; see also United States v. Pierce, 62 F. 3d 818, 833 (6th Cir. 1995); Johnson v. Hofbauer, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). In this case, the jury had significant evidence presented to it to support Petitioner's defense that he was not the perpetrator of the robbery. Because the jury was "well acquainted" with evidence that would have supported Petitioner's misidentification defense, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." Wong, 558 U.S. at 23. Petitioner is not entitled to relief on his ineffective assistance of counsel claim.

**C. Claim # 3: the denial of a continuance claim**

As part of his third claim, Petitioner claims that the trial court erred in denying his attorney's motion for an adjournment so that he could obtain additional discovery, primarily the results of the DNA testing.

In criminal proceedings, a trial court's denial of a continuance rises to the level of a due process constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay. See Burton v. Renico, 391 F.3d 764, 772 (6th Cir. 2004). In order to obtain habeas relief, a habeas petitioner must show that the denial of his request for a continuance resulted in actual prejudice to his defense. Id.; see also Powell v. Collins, 332 F.3d 376, 396 (6th Cir. 2003). Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefitted the defense. Powell, 332 F. 3d at 396.

13

Petitioner is not entitled to relief on his claim. The trial judge three times adjourned the matter to give defense counsel an opportunity to obtain the DNA results. Defense counsel ultimately received a copy of the DNA report by the time of trial. This report showed that no conclusions could be made comparing the recovered DNA samples with Petitioner's DNA. The report was admitted into evidence. 1/6/2016 Tr. at 148-150. Counsel ultimately obtained the DNA tests prior to trial. Petitioner has in any event failed to show that the DNA tests were exculpatory. Inconclusive DNA test results do not establish a habeas petitioner's actual innocence. See Satcher v. Pruett, 126 F. 3d 561, 571 (4th Cir. 1997). Petitioner was not denied any continuances nor has he shown any actual prejudice. Petitioner is not entitled to relief on his claim.

## IV. CONCLUSION

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484-485 (2000). A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. Id. at 336-337. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing

§ 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; see also Strayhorn v. Booker, 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

Having considered the matter, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right with respect to any of his claims. Accordingly, a certificate of appealability is not warranted in this case. See Strayhorn, 718 F. Supp. 2d at 854.

Although this Court will deny a certificate of appealability to Petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. Foster v. Ludwick, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (citing United States v. Youngblood, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if Petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. Id. at 764-765; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. Foster, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed in forma pauperis on appeal. Id.

Accordingly, the petition for writ of habeas corpus is denied; a certificate of appeability is denied. Petitioner is granted leave to appeal in forma pauperis.

SO ORDERED.

Dated: May 28, 2019          s/Mark A. Goldsmith
 Detroit, Michigan           MARK A. GOLDSMITH
                             United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 28, 2019.

                                                  s/Karri Sandusky
                                                  Case Manager